Denver & S. F. R. Co. et al. v. Domke et al., and Same ads. Same.

1. The constitution and statute contemplate the use of streets in the city of Denver by ordinary railroads, and there is clearly implied, if not express, legislative sanction empowering the city council to permit such use.

2. Under the statute this use is, however, an unusual and extraordinary use; and the authority of the council to permit the use is a "special power." There is a distinction, as to the abutting owner's right to compensation, between such use and the reasonable and careful improvement of the street for local convenience and traffic.

3. Abutting owners who purchase after the construction of such a road in the street, and those who, without objection, permit such construction, taking no legal steps within six years, cannot obtain injunctive relief forbidding the operation of the road.

4. Courts cannot, at the suit of a private party, no fraud being imputed to the municipal authorities, in a collateral proceeding ignore or modify the language used in an ordinance on the ground of deception connected with its original adoption.

5. Where the fee of an individual, although an abutting lot owner, is not sought to be taken, he cannot, under the constitution or under the statute on eminent domain, enjoin the construction and operation of a railroad merely because the damages to his premises are

not compensated in advance; provided the company act under sufficient legislative and municipal authority. Nor can the abutting owner in such case interpose the objection that the use of the street is not necessary.

*Appeal from Superior Court of Denver.*

In November, 1880, the Denver Circle Railroad Company was organized as a corporation under and by virtue of the laws of the state of Colorado. In January, 1881, it procured the passage of an ordinance by the city council granting authority to locate, construct, maintain and operate a single or double track railway and telegraph line through certain streets of the city, including Willow lane and Clark street. It thereupon proceeded to construct a narrow gauge railway through the streets above named, among others, and during the same year completed and commenced operating the road through said streets. The business thus inaugurated has been carried on down to the present time. The Circle Company becoming financially embarrassed in the operation of the road, judicial proceedings were instituted, and a receiver appointed, who took possession thereof. In the course of time a decree was entered by the circuit court of the United States, under which the road, its rolling stock and all its rights and franchises were sold. In 1887 the Denver & Santa Fe Railroad Company was organized under and in pursuance of the corporation laws of Colorado. The parties organizing this company had previously bought the capital stock, mortgage bonds and evidences of indebtedness issued by the receiver of the Circle Company. The Denver & Santa Fe Company, upon its organization, became the owner of the property thus purchased. The latter company proceeded with the operation of the Circle road as constructed, and also prepared to put down a third rail upon the ties already laid, for the purpose of operating thereon standard gauge trains, and carrying on the business of a standard gauge

road. The company connected directly, at Pueblo, with the Atchison, Topeka & Santa Fe Company, a through line from Kansas City to Pueblo. Plaintiffs, Herman Domke and others, are the owners of lots abutting on the two streets mentioned. They brought this suit in equity in the superior court for the purpose: First, of permanently enjoining the further operation of the narrow gauge Circle Railroad as now constructed; and secondly, for the purpose of perpetually enjoining the laying of the third rail, and the operating of standard gauge trains. The cause was tried to the court sitting as a chancellor. The first kind of relief thus sought was denied, but an injunction was granted under the second demand or prayer staying the projected changes until the Denver & Santa Fe Company had first proceeded, under the eminent domain statute, to condemn the right of way, in connection with the alleged additional burden, and have the damages to result to the plaintiffs' abutting property assessed. From the portion of the decree denying the injunction to restrain the continued operation of the Circle road, as now constructed, plaintiffs below appealed to this court. From the portion of the decree allowing the injunction restraining the laying of the third rail, etc., defendants below took their appeal. By agreement the two appeals are consolidated, and the errors assigned by both parties are considered and disposed of in one decision. The remaining essential facts, together with the constitutional and statutory provisions involved, sufficiently appear in the opinion.

Messrs. PATTERSON and THOMAS, for plaintiffs.

Messrs. C. E. GAST and EDW. L. JOHNSON, for defendants.

HELM, J.   The constitution (art. 15, § 4) declares, *inter alia*, that "any association or corporation organized for the purpose shall have a right to construct and operate a

railroad between any designated points within the state." It may happen that one of the "designated points" is within the corporate limits of some city or town, and can only be reached through a street. The legislature, by the act in force when the Circle Company ordinance was passed, authorized the city council of Denver "to regulate and prohibit the use of locomotive engines, to direct and control the location of railroad tracks, to require railroad companies to construct, at their own expense, such bridges, tunnels or other conveniences at public crossings as the city council may deem necessary, and to regulate the speed of all railroad trains." Charter 1877, § 40, subd. 45. See, also, Charter 1874. This statute clearly contemplates the use of streets by ordinary railroads. Unless such use was in the legislative mind its provisions are meaningless. Other provisions of the same act show conclusively that the clause in question does not refer to local street railways. But it is held that the fee to streets in Denver, covered by statutory dedications, is vested in the city in trust for the use of the public. *Railroad Co. v. Nestor*, 10 Colo. 403; *City v. Clements*, 3 Colo. 472. The legislature has delegated the exclusive control of the streets to the municipal authorities, subject only to its own paramount dominion. We think the authority of the city council to permit the construction and operation of an ordinary railroad through the street rests upon clearly implied, if not express, legislative sanction. This question is practically *res adjudicata.* "It was within the contemplation of the legislature that they [ordinary railroads] might enter and pass through the city." *Railroad Co. v. Nestor,* supra; *Railroad Co. v. Mollandin,* 4 Colo. 154.

It is hardly necessary to say that we regard the several additions referred to in this case as having been platted and recorded substantially in 'compliance with the statutory requirements, and hence treat them as statutory dedications. The statute does not, however, make this

a usual or ordinary use. It recognizes the importance of allowing such railroads ingress and egress into and out of the city, and the necessity of laying their tracks and operating their lines along some of the streets; but the use remains an unusual and extraordinary use. It is not one of the uses to which every street is necessarily and primarily dedicated. The authority of the council to permit this use is correctly termed a "special power." This power will naturally be exercised in connection with but few of the streets; and, while all dedications or grants are subject to the exercise of the power, as a matter of fact it is very rarely contemplated in the act of dedication. There is, therefore, no difficulty in distinguishing between the abutting owner's right to compensation for injuries occasioned by this use, and his claim, where the injury complained of results from a reasonable and careful grading or other improvement of the street for local convenience and travel. Upon this subject see the following opinions, and cases there cited: *Railroad Co. v. Nestor, supra; City v. Vernia,* 8 Colo. 399; *City v. Bayer,* 7 Colo. 113. The ordinance before us, granting a right of way to the Circle road, is therefore not invalid for the want of legislative authority in the premises. So far as this objection is concerned, the ordinance constitutes a valid license from the proper authorities to use a portion of the streets designated, and the Circle Company was not a mere trespasser *ab initio.*

The superior court did not err in refusing to enjoin the operating of the Circle road. It is sufficient, upon this objection, to say — *First,* that some of the plaintiffs below obtained their title after the company, acting under the municipal license above mentioned, had constructed its road, and the same was in operation; *second,* that the rest of the plaintiffs, all of whom were owners prior to the occupation of the street under such license, quietly stood by, permitting the expenditure of a large sum of money in construction, and waited more than six years

after such construction before entering a protest by instituting these legal proceedings; and that neither class of plaintiffs, thus situated, is in the position to ask of a chancellor injunctive relief against the operation of the road as now constructed. If, by this use of the street, the market value of plaintiffs' abutting property, for any use to which it may reasonably be put, has, since they become the owners thereof, been diminished, and by laches or otherwise they have not forfeited their right to compensation, they may bring an action at law and recover. But, under the circumstances here presented, a court of equity will not, through the extraordinary writ invoked, lay its strong hand upon the company, and stay the carrying on of its lawful business.

Did the court below err in enjoining the Denver & Santa Fe Company from laying a third rail, and operating standard gauge trains upon the road-bed originally constructed by the Circle Company, until it had proceeded under the eminent domain statute to condemn a right of way through the two streets mentioned in the pleadings? This is not an action directly against defendants for the unlawful usurpation or exercise of a corporate franchise, nor for the illegal appropriation or use of a public or *quasi*-public license. Neither the public, nor the city of Denver, nor any one acting or professing to act in behalf of the public or city, is here complaining. The suit is instituted by private property owners along the two streets in question, in their private capacity, and to prevent by injunction the continuation of one alleged private injury, and the perpetration of another private injury alleged to be threatened. Turning to the ordinance granting the Circle Company permission to use the streets named, we find that the company was "authorized to locate, construct, maintain and operate a single or double track railway and telegraph line, with the necessary turn-outs and switches;" also, that authority was given "to operate said railroad by steam-power;"

further, that the privileges conferred were to "be used for the purpose herein set forth, and none other." Nothing is said in this ordinance about the width of the gauge, size of the cars, or character or amount of traffic to be carried on. It is only by going back of the ordinance, and examining the articles of incorporation of the Circle Company, that a controversy in these respects is introduced. Plaintiffs allege that the city council was deceived by the statements as to gauge in those articles, and by the verbal representations of those who originated the enterprise; that the council adopted the ordinance with the understanding that the track would be of "three-foot or narrow gauge" width, and the trains would be operated only by the use of "dummy and noiseless engines." No such understanding is embodied in the ordinance. It describes an ordinary railway, with leave to use "steam-power" in operating its trains. The courts cannot, at the suit of a private party, the city remaining silent, and no fraud being imputed to the municipal authorities, in a collateral proceeding, ignore, annul or reconstruct the ordinance on the ground of deception connected with its original adoption. For the purposes of this suit we must accept the ordinance as it reads, and construe the privilege granted as broad enough to include a standard gauge track, with standard gauge rolling stock. It should, perhaps, be observed, in passing, that, while the Circle Company's articles of incorporation specify the gauge, the incorporation law, under which they were framed, contains no such requirement.

A clause in the ordinance provides that the Circle Company "shall not grant to any other railroad company the right to use any part of said right of way." Whatever may have been the purpose of this provision, it is clear that there was no intention to prevent the passing into other hands of the company's property, including the license granted; for another clause declares "that said company, its successors and assigns, are authorized,"

etc. And it is equally clear that the Denver & Santa Fe Company, through the purchase at the receiver's sale, succeeded to the rights and interests of the Circle Company under the ordinance. The former company is, therefore, the owner of the franchise, together with the license in question. It is also in possession of the property, and entitled to operate the road as now constructed.

We shall assume, without, however, determining the matter, that the laying of the third rail, and doing the business of a standard gauge trunk line, is an additional burden or servitude imposed upon the street; also, that those acts may result in injury to the abutting lot owner, for which, under the constitution, he is entitled to compensation. Should a court of equity, at his suit, in view of the facts of this case, grant an injunction forbidding the acts in question? As we have already seen, the fee to Willow lane and Clark street is by law vested in the city in trust for the use of the public. It is not, and never was, in the present plaintiffs, who are purchasers of lots subsequent to the dedication of the streets. There is no evidence to show that the grants to them included the reversionary interest or reserved rights, if any such interest or rights there be, of the dedicator in this fee. If the street should be abandoned by the municipality, or for any other reason the trust should fail, and the fee pass out of the city, it would not revert to plaintiffs. *Gebhardt v. Reeves*, 75 Ill. 301. It follows, therefore, that the increased burden mentioned would not constitute an actual taking of plaintiffs' property, though their peculiar interest in the street as abutting owners might entitle them to compensation for injuries inflicted. Besides, it is suggested that, where such a qualified fee in the city as we are now considering exists, "the reversionary right of the owner of the fee in the surface of the street is too remote and contingent to be of any appreciable value, or to be regarded as property, which, under

the constitution, is required to be paid for when its use is appropriated by the public." *Spencer v. Railroad Co.* 23 W. Va. 406, and cases cited. But where the fee of an individual is not sought to be taken, though an abutting lot owner, he cannot enjoin the construction and operation of a railroad merely because the damages to his premises are not compensated in advance; provided the company act under sufficient legislative and municipal authority. 1 High, Inj. (2d ed.) § 637.

It is contended that this doctrine ought not to be held applicable here, because of the peculiar phraseology of our constitution. True, this instrument declares that private property shall not be "damaged" without compensation. It does not, however, require that the damages, where property is not "taken," shall be computed and paid before the injuries complained of are inflicted. It provides that "property shall not be needlessly disturbed, or the proprietary rights of the owner therein divested," till remuneration be made. The proprietary rights of plaintiffs in the land are not divested, because such rights do not exist. There may be a disturbance of the easements connected with the use or enjoyment of their abutting lots; but needful disturbances of property may take place without prior compensation. *McClain v. People,* 9 Colo. 190. The city council, by adopting the right-of-way ordinance, determined conclusively, so far as the general public is concerned, including all interests of the plaintiffs common to the general public, that the anticipated disturbances were needful. But the disturbances mentioned in the constitution are, in our judgment, disturbances of property sought to be taken, or, at least, property of the same owner out of which that desired is to be carved. We do not think that the clause in question was intended to require the prior assessment and payment of probable damages for disturbances, to take place in the future, of an easement connected with the property of a party, no part of which is taken, near or adjacent to the land condemned.

The authority for injunctive relief in cases like the one at bar must therefore be found, if it exist at all, in the eminent domain statute. Under a statute similar to ours in this respect, and with a constitutional provision in force substantially the same as ours, with the exception of the clause last above construed, the supreme court of Illinois denied this relief to abutting owners. It is held by that court that the corresponding statutory expression directing an assessment in condemnation proceedings, or compensation for damages to property not taken, must be construed as referring "to contiguous lands of the same owner not actually taken." *Stetson v. Railroad Co.* 75 Ill. 74; *Patterson v. Railroad Co.* id. 588; *Railroad Co. v. Schertz*, 84 Ill. 136. The reasoning of these opinions on this point is satisfactory. We shall not repeat it, nor attempt to enlarge upon it or add to its force. The dissenting views in the *Schertz Case* are based upon a peculiar expression of the ordinance there under consideration, and the insolvency of the defendant company, neither of which matters appear in the case at bar. No inconsistency exists in this respect, as counsel for appellees seem to think, between those cases and the later case of *Rigney v. City*, 102 Ill. 64. The *Rigney Case* was an action at law by an adjacent owner for injuries that had already been inflicted. And the *Stetson, Patterson* and *Schertz Cases*, while denying injunctive relief, recognize the right of recovery invoked and allowed in the *Rigney Case*. We mention the fact that there is no averment or proof, in the case before us, that the Denver & Santa Fe Company are insolvent, or unable to respond in damages in actions at law for all actionable injuries that may be inflicted, though the existence of such insolvency is not deemed sufficient by a majority of the supreme court of Illinois to warrant interference by injunction prior to the assessment of damages in a legal action. If a judgment at law has been obtained, and for any reason, not the fault of plaintiff, it cannot be collected, he may appeal to equity for appropriate relief. *Railroad Co. v.*

*Schertz, supra.* See, further, upon this branch of the discussion, the following cases: *Spencer v. Railroad Co. supra; Railroad Co. v. Reinhackle,* 15 Neb. 279; *Protzman v. Railroad Co.* 9 Ind. 467. In England statutes exist containing provisions substantially similar to those we are now considering, constitutional as well as statutory; and the courts of that country adhere, in effect, to the foregoing rule, denying injunctive relief in cases like the one before us. *Hutton v. Railway Co.* 7 Hare, 259; *Lister v. Lobley,* 7 Adol. & E. (N. S.) 124.

Our statute (section 242, Civil Code) seems to contemplate that the commissioners or jury shall determine the necessity for the taking of private property, though they are not required to return a specific finding upon this question. The ordinance granted the Circle Company the privilege of constructing and operating a standard gauge railway; and we must, in the present suit, presume that it was adopted by the city council after full and careful investigation of the subject. Since the fee is not in plaintiffs, and the council possessed authority to grant the privilege in question, their action must be considered decisive as to the necessity for the taking, in so far as the license to use a street for this purpose can be considered a "taking" of private property. Besides, this provision of the statute does not refer to the damaging of property. If, therefore, there be no taking of the fee, the consequential injuries resulting to an abutting lot owner, through interference with certain easements, do not entitle him, by virtue of the statute, to interpose the objection that the use of the street is not necessary.

The decree of the superior court will be reversed and the cause remanded.

*Reversed.*