EDWARDS v. THRASH *et al.*

No. 559.   Opinion Filed May 31, 1910.

(109 Pac. 832.)

1,   **MUNICIPAL CORPORATIONS — Streets — Power to Change Grade.** The trustees of an incorporated town or village organized under the laws of Oklahoma Territory as extended in force in the state after its erection are authorized and empowered to lay out, open, grade, and otherwise improve the streets, alleys, sewers, sidewalks, and crossings therein, and to keep them in repair, and to vacate the same.

(a)  Such trustees are authorized in the exercise of such municipal authority to change the grade of a street.

2.   **MUNICPIAL CORPORATIONS — Improvements of Street—Injunction.** The jurisdiction of equity may not generally be invoked by an abutting lot owner to restrain a municipality from making upon a street previously dedicated to public use, public improvements such as paving and the construction of sidewalks, until such abutting owner has first been compensated for any consequential damages arising solely from the change of a grade.

(a)  Such abutting lot owner has an adequate remedy at law for such damages.

(Syllabus by the Court.)

*Error from District Court, Custer County; W. N. Maben, Judge.*

Action by H. S. Edwards against J. N. Thrash and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Henry Bulow,* for plaintiff in error.
*A. J. Welch,* for defendants in error.

WILLIAMS, J.   The following questions are raised on this record:  (1)  As to whether the trustees of an incorporated town or village in the improvement of a street are authorized in the exercise of their municipal authority to change a previously established grade of a street, and (a) will an injunction lie to prevent such change until the abutting property owner has been previously compensated for any consequential damages arising therefrom?

Section 942, Comp. Laws 1909 (section 610, Wilson's Rev. & Ann. St. Okla., 1903), provides:

"Any city, town or village organized under and by virtue of a special act or charter or under and by virtue of any general law of Oklahoma is hereby authorized and empowered by and through its proper municipal officers to lay out, open, grade, and otherwise improve the streets, alleys, sewers, sidewalks, and crossings therein and to keep them in repair and to vacate the same."

Paragraph 9, § 847 (section 512, Wilson's Rev. & Ann. St. Okla., 1903), Comp. Laws 1909, provides that the board of trustees shall have the power "to lay out, open, grade, and otherwise improve the streets, alleys, sewers, sidewalks, and crossings, and to keep them in repair and to vacate same."

Section 531, Wilson's Rev. & Ann. St. 1903, provides that the board of trustees (of an incorporated town) shall superintend the grading, paving, and improving of streets and the building and repairing of sidewalks.

Section 24, art 2, of the Constitution of this state, provides:

"Private property shall not be taken or damaged for public use without just compensation. Such compensation, irrespective of any benefit from any improvements proposed, shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law. The commissioners shall not be appointed by any judge or court without reasonable notice having been served upon all parties in interest. The commissioners shall be selected from the regular jury list of names prepared and made as the Legislature shall provide. Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation. The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for

which it is taken. · In all cases of condemnation of private property for public or private use, the determination of the character of the use shall be a judicial question,."

Section 15, art. 2, of the Constitution of Colorado, (1876) reads as follows:

"That private property shall not be taken or damaged, for public or private use, without just compensation. Such compensation shall be ascertained by a board of commissioners, of not less than three freeholders, or by a jury, when required by the owner of the property, in such manner as may be prescribed by law, and until the same shall be paid to the owner, or into court for the owner, the property shall not be needlessly disturbed, or the proprietary rights of the owner therein divested; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use alleged be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public."

The only difference in the portion of this provision applicable to this case and the corresponding part of the provision of the Oklahoma Constitution is the addition to the Colorado provision of the word "needlessly."

In *Denver & Santa Fe R. Co. v. Domke et al.,* 11 Colo. 247, 17 Pac. 777, this section of the Colorado Constitution was construed, wherein it is said:

"We shall assume, without, however, determining the matter, that the laying of the third rail and doing the business of a standard gauge trunk line is an additional burden or servitude imposed upon the street; also, that those acts may result in injury to the abutting lot owner, for which, under the Constitution, he is entitled to compensation. Should a court of equity at his suit, in view of the facts of this case, grant an injunction forbidding the acts in question? As we have already seen, the fee to Willow lane and Clark street is by law vested in the city in trust for the use of the public. It is not, and never was, in the present plaintiffs, who are purchasers of lots subsequent to the dedication of the streets. There is no evidence to show that the grants to them included the reversionary interest or reserved rights, if any such interest or rights there be, of the dedicator in this fee. If the street should be abandoned by the municipality, or for any other reason the trust should fail, and the fee pass out of the city, it would not revert to

plaintiffs. *Gebhardt v. Reeves,* 75 Ill. 301. It follows, therefore, that the increased burden mentioned would not constitute an actual taking of plaintiff's property, though their peculiar interest in the street as abutting owners might entitle them to compensation for injuries inflicted. Besides, it is suggested that, where such a qualified fee in the city as we are now considering exists, 'the reversionary right of the owner of the fee in the surface of the street is too remote and contingent to be of any appreciable value, or to be regarded as property, which, under the Constitution, is required to be paid for when its use is appropriated by the public.' *Spencer v. Railroad Co.,* 23 W. Va. 406, and cases cited. But where the fee of an individual is not sought to be taken, though an abutting lot owner, he cannot enjoin the construction and operation of a railroad merely because the damages to his premises are not compensated in advance, provided the company act under sufficient legislative and municipal authority. 1 High, Inj. (2d Ed.) § 637. * * * The authority for injunctive relief in cases like the one at bar must therefore be found, if it exist at all, in the eminent domain statute. Under a statute similar to ours in this respect, and with a constitutional provision in force substantially the same as ours, with the exception of the clause last above construed, the Supreme Court of Illinois denied this relief to abutting owners. It is held by that court that the corresponding statutory expression directing an assessment in condemnation proceedings, or compensation for damages to property not taken, must be construed as referring 'to contiguous lands of the same owner not actually taken.' *Stetson v. Railroad Co.,* 75 Ill. 74; *Patterson v. Railroad Co.,* 75 Ill. 588; *Railroad Co. v. Schertz,* 84 Ill. 136. The reasoning of these opinions on this point is satisfactory."

Section 21 of article 2 of the Constitution of Missouri of 1875 (Ann. St. 1906, p. 148) is as follows:

"That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested. The fee of land taken for railroad tracks without consent of the owner thereof shall remain in such owner, subject to the use for which it is taken."

This provision, as far as it goes, is substantially the same as section 24, art. 2, *supra*. The case of *Clemens v. Conn. Mut. Life Ins. Co.*, 184 Mo. 46, 82 S. W. 1, 67 L. R. A. 362, 105 Am. St. Rep. 526, was an appeal from the circuit court of the city of St. Louis perpetually enjoining the defendants from changing the grade of Arkansas avenue in said city between the north line of Cherokee street and the south line of McKean avenue, and from changing the grade of the alley running from Gravois road or Gratiot avenue to Arkansas avenue through a certain block in said city. Said provision of the Constitution was there considered. The case of *Denver & Santa Fe R. Co. v. Domke, supra,* is cited and quoted with approval, and it was held "that whether plaintiff was an abutting owner or not he was not entitled to have the improvements which were being made pursuant to an ordinance of the city and clearly within its charter powers enjoined; that plaintiff has not brought himself within any recognized head of equity jurisdiction, and, if he has any cause of action, it is against the city for damages."

Article 156 of the Constitution of Louisiana, 1879, (sec. 167, Const. 1898) is as follows:

"Private property shall not be taken nor damaged for public purposes without just and adequate compensation being first paid."

In *McMahon & Perrin v. St. Louis, Ark. & Tex. R. Co.*, 41 La. Ann. 827, 6 South. 640, it was held that "an injunction to prohibit the construction of a public work, the building of which involves no taking or invasion of plaintiff's property, but only an alleged consequential damage to its value, which is conjectural and incapable of ascertainment until after the construction, may be properly bonded, notwithstanding the provision of article 156 of the Constitution." On page 830 of 41 La. Ann., on page 641 of 6 South., it is said:

"Prior to the Constitution of 1879 the organic law of this state, like that of all the states of this Union, simply provided that 'private property shall not be taken for public purposes without adequate compensation,' etc. Under this rule, in absence of other

special provision, a taking of the property was a condition precedent to liability and the measure of compensation due was the value of the property taken. Mere consequential damage to property, when the property itself was not taken, was not recoverable; and much less any damages resulting to individual owners, in the way of discomfort, inconvenience, loss of business, and the like, as such injuries, inasmuch as they resulted only from the exercise by another of his legal right, were *damna absque injuria*. The article 156 of the present Constitution, in providing that 'private property shall not be taken *nor damaged* for public purposes without adequate compensation, etc.,' only extended its protecting shield over one additional injury and required compensation, not only for property *taken,* but also for property *damaged.* As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damage the measure of compensation is the diminution in the value of the property. There is no warrant for extending the liability one whit beyond this. We are simply to inquire what damage has been done to the property; i. e., to its value for rental and sale. Mere consequential injuries to the owners arising from discomfort, disturbance, injury to business, and the like remain, as they were before, *damna absque injuria,* particular sacrifices which society has the right to inflict for the public good. Such is the view taken by the Supreme Court of the United States in applying an identical provision of the Constitution of the state of Illinois. We quote from the opinion: 'The jury were instructed that although the occupant may have found it difficult to haul coal out of this lot, that did not weigh upon the question as to the value of the lot in the market.' * * * The scope of the charge is fairly vindicated in the following extract: 'The real question is, Has the value of the property to sell or rent been diminished by the construction of this viaduct? It may be that it cannot long be used for the purpose of a coal yard, or for any purpose for which it has heretofore been used, but that would not be material, if it can be rented or sold at as good a price for other purposes, * * * except that if the proof satisfies you that any of the permanent improvements put on this lot for the particular business carried on there have been impaired in value, and you can from the proof determine how much these improvements are damaged, the plaintiff would be entitled to recover for such damage to the improvements,' etc. The Supreme Court fully approves this

charge, which contains much more of similar import. *Chicago v. Taylor*, 125 U. S. 161 [8 Sup. Ct. 820, 31 L. Ed. 638]."

Section 8 of article 16 of the Constitution of the state of Pennsylvania (1873) is as follows:

"Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured, or destroyed by the construction or enlargement of their works, highways, or improvements, which compensation shall be paid or secured before such taking, injury, or destruction."

In *Delaware Co.'s Appeal*, 119 Pa. 159, 13 Atl. 62, "a landowner filed a bill to restrain the county commissioners from the erection of a new bridge, wholly within the lines of the old bridge and public roadway. Held, that as damages for whatever injuries were suffered were within section 8, art. 16, of the Constitution, (Pa. 1873), and recoverable in an action at law, with sufficient security in the power of municipal taxation, the bill should be dismissed."

Section 9, art. 3, Const. W. Va. 1872, is as follows:

"Private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company, incorporated for the purpose of internal improvements until just compensation shall have been paid or secured to be paid, to the owner. * * *"

In *Spencer v. Point Pleasant & Ohio R. R. Co. et al.*, 23 W. Va. 406, it was held:

"If a railroad company without taking the land damages it by the construction of its road, the owner of such land cannot as a matter of right enjoin said company so proceeding with the construction of its road till such damages are ascertained, and paid; for section 9 of article 3 of our Constitution, while it gives a right in such case to recover of a railroad company such damages in an action at law, does not give a right to such injunction, as it does not require such damages to be paid or secured to be paid before such damages actually arise by the construction of the road."

See, also, *Railroad Co. v. Gibbons*, 35 W. Va. 57, 12 S. E. 1093; *Ward v. Railroad Co.*, 35 W. Va. 481, 14 S. E.

142; *Maxwell v. Cent. Dist. & Print. Tel. Co.*, 51 W. Va. 121, 41 S. E. 125; *Arbenz v. Wheeling & H. R. Co.*, 33 W. Va. 1, 10 S. E. 14, 5 L. R. A. 371.

Paragraph 1, § 3, art. 1, Const. Ga. 877, provides:

"Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid."

In *Moore v. City of Atlanta*, 70 Ga. 611, the Illinois case hereinafter referred to was cited with approval, and the court further said:

"But the stoppage of all the improvements of the city by the stern writ of injunction is another and vastly more important question. Has he or any other citizen the right absolutely to stop the entire system of grades of a whole street, or of two streets, because his property will be damaged if the contemplated improvement, in the judgment of the authorities, be carried into effect? Is it not better that one man's property be incidentally damaged than that the city authorities be absolutely prohibited from grading the streets? Is it not more in harmony with all law and reason that this be so, especially when whatever damage the one man sustains the municipality will be made to pay? It might damage the one man $1,000 to make the contemplated grade. It might damage the march of improvement in a great and growing city millions of money not to make it. 'It is therefore more equitable—better, in every sense better—to pay the one citizen his comparatively small damage than to impede the course of the city at the expense of millions, which the one citizen could not, and ought not to be asked to pay. We do not mean to say that in this case the march of improvement would be so stopped and at such injury to the city. But the principle would embrace all cases where the private property of any one citizen would be damaged by a contemplated grade of the streets by him. He could also arrest and enjoin the city, and the result would be disastrous. An injunction granted to one must, under like circumstances, be granted to all others, and the wheels of the municipal government, so far as improvements of streets is concerned, would be most effectually blocked."

And the writ of injunction to enjoin the municipal authorities from grading or changing the grade of a street in front of the complainant's house on the ground that the grade had been fixed by the city some years before was denied. See, also, *Fleming v. City*

*of Rome,* 130 Ga. 383, 61 S. E. 5; *Brown v. Atlanta Railway Co.,* 113 Ga. 476, 39 S. E. 71.

Section 17, art. 1, Const. Tex. 1876, is as follows:

"No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and when taken, except for the use of the state, such compensation shall be first made, or secured by a deposit of money. * * *"

In *Gray et al. v. Dallas Terminal R. & Union Depot Co.,* 13 Tex. Civ. App. 158, 36 S. W. 352, it was held:

"The appropriation by a railroad company of a right of way over the streets of a city under a valid city ordinance granting such privilege is not, as to damages thereby occasioned to abutting property, a taking of such property within the meaning of section 17, article 1, of the Constitution, requiring that adequate compensation to the owners of property taken shall be first made or secured by deposit of money."

On page 165 of 13 Tex. Civ. App., on page 355 of 36 S. W., the court said:

"This suit does not involve a question of damages, but is based purely upon the equitable remedy by injunction, * * * appellants denying the right of appellee to construct its railway along the streets named. If appellee has obtained the consent of the city council, the owners of the majority of front feet, exclusive of street intersections, being willing, it has acquired the legal right to construct and operate its road, and the question of damages to an abutting property owner is one which can be settled hereafter. The court will not enjoin merely because some one may be damaged. It is well said by Chief Justice Fuller, in the Osborne Case, above: 'But where there is no direct taking of the estate itself, in whole or in part, and the injury complained of is the infliction of damages in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial, and the remedy at law inadequate in effect, before restraint will be laid upon the progress of the public work. And if the case-made discloses only a legal right to recover damages, rather than to command compensation, the court will decline to interfere.'"

And the writ of injunction was refused.

Section 13, art. 2, Const. Ill. 1870, provides:

"Private property shall not be taken or damaged for public use without just compensation."

In the case of *Stetson v. C. & E. R. Co.*, 75 Ill. 74, this provision was construed, wherein it said: ·

"Whatever damages, if any, the complainant has suffered, are consequential, and arise from the lawful use of the adjoining street, in which he has no interest except an easement in common with the public. The question, therefore, of most importance is whether equity will assume to enjoin the use of the railroad upon the street until the landowner's damages shall have been assessed and paid under the eminent domain law, or will be remitted to his remedy at law. * * * Manifestly all proceedings for the condemnation of private property for public use are at law, and accordingly the General Assembly has provided by general law how such proceedings shall be commenced and conducted. Eminent Domain Act of 1872. The mode of procedure is definitely pointed out. Where the right to take private property for the construction of any railroad or other public use or which may damage property not actually taken has been conferred upon any corporate authority, and such corporation cannot agree with the owner as to such just compensation, it is made the duty of the party authorized to take or damage such property to file a petition describing the property and asking to have the compensation assessed. What construction shall be given to the words in this act, 'which may damage property not actually taken,' involves some difficulty, unless they are understood to refer to contiguous lands of the same owner not actually taken. A portion of the land having been taken, the remainder may be damaged in consequence of the taking. Where the party, seeking to make the condemnation has not embraced all of the owner's contiguous lands not actually taken, but damaged, the owner may file a petition in the nature of a cross-petition, and have his damages for land not actually taken assessed in the same proceeding. *Mix v. L. B. M. R. R. Co.*, 67 Ill. 319. It must be in this sense the word 'damaged' is employed in the act to provide for the exercise of the right of eminent domain. The damages are direct and physical and result from taking a portion of the land. But where no portion of the land is taken, and the damages suffered are consequential, by reason of what the corporation does upon its own land or that of another, it does not seem there is any warrant for instituting proceedings for the ascertaining of such damages.'

Vol. 26—31

In the case at bar, one allegation in the bill is, the company denies the owner of the adjacent land has sustained any damage, and it seems absurd the company shall be required to file a petition alleging the owner has sustained damage.. Without such allegation, what would there be to try? No land is sought to be condemned, and the company contest the fact of consequential damages. Where land itself is taken it is always of some value, and that gives the court jurisdiction of the cause. It would be a singular proceeding if the corporation should file a petition alleging the owner of land in proximity to a public improvement had sustained no damage, and ask the court to adjudicate upon it."

And after an exhaustive discussion of the question, the court held that there was no ground for the invoking of the jurisdiction of a court of equity, and an injunction was denied. See, also, *D. M. Osborne & Co. v. Mo. Pac. Ry. Co.,* 147 U. S. 253, 37 L. Ed. 155, 13 Sup. Ct. 299; *Id.* 37 Fed. 830; and *Horse Ry. Co. v. Cable Tramway Co., of Omaha* (C. C.) 32 Fed. 730.

The only cases cited holding to the contrary are as follows: *Montgomery v. Lemle,* 121 Ala. 609, 25 South. 919; *Brown v. Seattle,* 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161; *Donovan v. Allert,* 11 N. D. 289, 91 N. W. 441, 58 L. R. A. 775, 95 Am. St. Rep. 720; *Searle v. City of Lead,* 10 S. D. 312, 73 N. W. 101, 39 L. R. A. 345; *McElroy v. Kansas City* (C. C.) 21 Fed. 257.

Section 7, art. 14, Const. Ala. 1875, which was in force at the time when said action arose, provides:

"Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements which compensation shall be paid before such taking, injury or destruction."

We are unable to see how a decision holding an injunction may be granted to prevent a municipality from changing the grade of a street until the injury to the abutting owner has first been assessed and paid to such owner based on the foregoing constitu-

tional provision would be in point in the consideration of such a question in this state.

Section 16, art. 1, of the Constitution of the state of Washington of 1889, provides:

"No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner."

Section 13, art. 6, Const. S. D. 1889, provides:

"Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained and before possession is taken. No benefit which may accrue to the owner as a result of an improvement made by any private corporation shall be considered in fixing the compensation for property taken or damaged."

Section 14, art. 1, Const. N. D. 1889, is the same as section 13, art. 6, Const. S. D. *supra.*

It will be observed that the provisions of the Constitutions of North and South Dakota and the state of Washington, as above set out, are different from that of Oklahoma, Missouri, and Colorado. However, the Supreme Courts of Louisiana, Georgia, and Pennsylvania, with constitutional provisions fully as strong, by unanimous decisions, have held that the provision requiring compensation to be first paid to the owner does not include consequential damages. It is further to be considered that in the Washington case, *Brown v. City of Seattle, supra,* the opinion was not delivered by a unanimous court, only three judges, to wit, Stiles, Anders, and Dunbar, sustaining the majority opinion; Judges Scott and Hoyt dissenting. The Washington and South Dakota cases were actions to enjoin the city from changing the grade of streets and the North Dakota case to prevent a telephone company from using a certain street under a franchise until the constitutional requirement in regard to compensation for damaging property for public use had been complied with. In the North Dakota case, the court said:

"This brings us to the real question in this case: To what public purpose were the streets originally dedicated? Is the use of

the street for telephone posts and wires within the purposes of the original dedication to the public by the original proprietors? The primary use of a street or highway is confined to travel or transportation. Whatever the means used, the object to be attained is passage over the territory embraced within the limits of the street. Whether as a pedestrian, or on a bicycle, or in a vehicle drawn by horses or other animals, or in a vehicle propelled by electricity, or in a car drawn by horses or moved by electricity, the object to be gained is moving from place to place. The same idea is expressed by courts and text-writers, that 'motion is the primary idea of the use of the street.' The defendants claim that the use of the street for telephone poles is within the use contemplated, as it facilitates the transmission of intelligence, and makes intercommunication between persons possible without the use of the street, and thus lessens travel by persons on the streets, and thereby renders travel thereon free from the annoyance and inconvenience of crowded streets. There is force in the contention, and several courts have adopted the view that the use of poles for such purposes is within the purpose of the original dedication, and therefore not a new use nor an additional burden on the street, because such use pertains to travel on the street. That it lessens travel on the street is admitted. That, however, is hardly the test. The question is: Does it lessen travel on the street by such means as cause a permanent obstruction of the street for a purpose not within the original dedication? The plaintiff is entitled to free access to his house, and to light and air for his house, without obstruction. If, for any public purpose inconsistent with the grant to the public of the use of the street, the street is obstructed in front of his lot abutting on such street, such use entitled him to compensation. If within the original purpose, and he is deprived of light or air, he is not entitled to relief or to compensation. The city had the right to authorize the defendant to construct a telephone system in the manner described, if it did not infringe upon any of the property rights of the plaintiff to the street by virtue of his ownership of the lot. Neither the city council nor the Legislature could deprive the plaintiff of compensation for his property rights in such lot, if the telephone poles set thereon are not a use of the street within the purposes for which the easement was originally conveyed to the public. The Legislature cannot deprive the plaintiff of his property rights without his consent and without compensation. The Constitution prohibits such taking or damaging of his property, even

for public purposes, without first procuring his consent or first compensating him. The Legislature may authorize the use of the easement of the public in the street, but not to the damage of the owners of real estate fronting on such street, unless condemnation or consent or compensation is first made or given. The streets of said city were given to the public for public use."

From this reasoning it does not follow that an injunction would have been sustained by that court against a municipal corporation when changing the grade of street in making a street improvement in the lawful exercise of its municipal power.

Whilst the first clause of section 24, art. 2, *supra,* provides that private property shall not be taken or damaged without just compensation, an accompanying clause in the same section provides that, until compensation shall be paid to the owner or into court for the owner, the property of the owner shall not be disturbed or the proprietary rights of the owner divested. Does this latter clause require compensation to be paid to the owner or into the court for the owner where the damages are merely consequential? The word, "disturb," according to Mr. Webster, means "to interrupt a settled state of," and according to the same authority "proprietary" means "belonging or pertaining to a proprietor, considered as property, owned"; and the words "the property shall not be disturbed or the proprietary rights of the owner divested" seem to mean that *possession* thereof shall not be taken, nor his property taken, nor shall the title thereof be divested, until compensation therefor has been first paid to the owner or into court for the owner. This was the controlling construction in the state of Missouri at the time of the adoption of this clause in the Oklahoma Constitution, and, when there was no such provision in force in any other state where a contrary construction prevailed, that of the highest court of Missouri should be especially persuasive.

All the courts seem to hold that, under such constitutional provisions, consequential damages arising from the change of an established grade may be recovered by the abutting owner. See, also, section 1, art. 1, c. 10, Sess. Laws 1907-08, and section 443, Wil-

son's Rev. & Ann. St. 1903. The only difference seems to be as to whether same shall be ascertained in an eminent domain proceeding or in an action at law for damages. The majority of the courts having passed on the question appear to hold the latter.

The first Legislature of the state after its erection passed an act entitled "An act amending sec. 28 of article 9 of chapter 17, of the Statutes of Oklahoma, 1893, and regulating the method of procedure in the condemnation of private property for both public and private use." Sess. Laws 1907-08, art. 1, c. 20, pp. 258, 261. Neither the eminent domain act as brought over from the territory of Oklahoma nor as thus amended provides for the assessment of consequential damages in the case of public improvements made by a municipality. This evident legislative construction of section 24 of article 2 accords with that placed on the similar provision of the Missouri Constitution by the Supreme Court of that state. Consequential damages would be difficult to ascertain before the improvement had been made. This is one of the reasons given by many of the courts as to why it was not intended by the Constitution and statute makers that provisions providing for compensation first to be made for the taking or damaging of property by virtue of eminent domain proceedings did not include consequential damages, and we agree with the Supreme Court of Missouri, in *Clemens v. Insurance Co., supra,* in holding that where the property of the citizen is not taken and his proprietary right not disturbed, but the damage to his property is purely consequential, he is not entitled to have same ascertained and paid before the proposed public work is done, and is not entitled to have the work done in pursuance of valid municipal and legislative authority enjoined, but his remedy is one at law for damages.

As to whether this rule will be extended to cases where the consequential damages may be occasioned other than through municipal agencies, not being involved in this case, is not determined.

The judgment of the lower court is affirmed.

All the Justices concur.