OVERHOLSER *et al.* v. OKLA. INTERURBAN TRAC. CO.

No. 2354. Opinion Filed November 14, 1911.

(119 Pac. 127.)

1. RAILROADS—Interurban Companies—Corporate Powers. A corporation formed under the general laws of the state, in pursuance of section 1408, Compiled Laws of Oklahoma 1909, with the power to use electricity for the propulsion of its cars and rolling stock, in addition to the powers exercised by railroad corporations generally, may, with the consent of the authorities of any city or town in the state of Oklahoma located upon or along its lines, construct a system of street railways upon such streets and upon such terms and conditions as may be agreed upon between such corporations and such city or town, and may also accept lighting contracts with such cities or towns to supply the said cities or towns or the inhabitants thereof with light or electric current for power, or such railways or such corporation may also acquire by purchase or consolidation plants, franchises, contracts, good will, and other property of any existing street railway or lighting company, as provided by section 1409, Compiled Laws of Oklahoma 1909.

2. CORPORATIONS—Charters—Measure of Powers. The charter of a corporation, read in connection with the general laws applicable to it, is the measure of its powers.

3. MUNICIPAL CORPORATIONS — Franchises — Amendment—Submission to Popular Vote. Section 5a, article 18, of the Constitution, which provides: "No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon thirty days' notice; and no franchise shall be granted, extended, or renewed for a longer term than twenty-five years," applies to an original franchise or to a renewal or extension of the period for which a grant has been made, and does not apply to a mere extension or enlargement of the facilities which

the franchise holder employs in exercising a power previously granted.

4. **STREET RAILROADS** — Franchises—Amendment—Constitutional Restrictions. The amendment of a section of an ordinance granting a franchise passed by the city council of a city of the first class by providing that an electric street railway may extend its tracks generally throughout the city and use the streets thereof for that purpose notwithstanding the original franchise named certain streets which might be used for that purpose, is not repugnant to that part of section 5a, article 18, of the Constitution which provides that ''no franchise shall be granted, extended or renewed for' a longer term than twenty-five years.''

5. **INJUNCTION**—Street Railroads—Eminent Domain—Damages to Abutting Lots. Persons owning lots abutting upon the streets of a city of the first class, upon which an electric street railway company is about to lay its tracks with the consent of the city, are not entitled to a writ of injunction to restrain the progress of such work upon the ground that the consequential damages accruing to said lot owners by the additional servitude laid upon the street have not been first ascertained and paid.·

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; Geo. W. Clark, Judge.*

Action ·by W. L. Overholser, R. P. Carpenter, Catherine Jones, Catherine Witt, Joseph H. Goldstein, E. H. Weatherbeam, C. ·M. Blanchard, F. C. Gow, and Lillie Larimore against the Oklahoma Interurban Traction Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

*Henry E. Asp, Devereux & Hildreth,* and *Snyder, Owen & Lybrand,* for plaintiffs in error.

*J. H. Wright, H. A. Kroeger,* and *W. A. Ledbetter,* for defendant in error.

KANE, J. The plaintiffs in error, who hereafter will be referred to as plaintiffs, commenced this suit in the court below, against the defendant in error, which hereafter will be referred to as defendant, to enjoin it from constructing its street railway lines along and upon certain streets of the city of Oklahoma City. The plaintiffs alleged, in substance: That they are the owners of residence property abutting on Robinson and other

streets of said city, owning their lots and the streets in front of them in fee simple, subject to the right of the public in the streets. (1) That the defendant was about to use said streets for the purpose of constructing, operating, and maintaining an electric street railway system thereon, without authority of law, thereby committing a nuisance; and (2) if authority exists, without first ascertaining and compensating them for the injury done to their property by said user. The relief prayed for was denied by the court below, and to reverse that judgment, this proceeding in error was commenced.

The principal grounds upon which they deny the right of the defendant to use and occupy said street for such purpose is that, under its articles of association and organization, it is authorized to construct, operate, and maintain only and solely interurban street railways, and not a street railway system, as that term is generally understood, operating throughout the city. The original articles of association were issued in May, 1905, and among other things, provided:

"That the purposes for which this corporation is formed, are, to build, equip, run, and operate an electric street railroad from some accessible point in Oklahoma City to and through Capitol Hill, and through and around Oklahoma City, and to Lexington, O. T., and vicinity, to own and operate trolley poles, power plants, houses and any other modern appliances therefor. To exercise the right and powers of railroad corporations, and may, with the consent of the towns or cities along said line, construct, supply, and furnish electric lights to same and to the citizens thereof, as well as electric currents. To acquire by purchase or otherwise the franchise, contracts, plants, good will, and other rights or property of any other electric street railroads or lighting companies that may be located within any of the cities or towns along said line. To own or acquire by lease or otherwise all other appliances, either real or personal, that may be deemed necessary to the full enjoyment of the rights and privileges herein obtained. The place from and to which this railroad is to be constructed, is in and upon some accessible street or streets in the city of Oklahoma, and thence to and through such street and streets in the town of Capitol Hill as it may desire to use, and to and through Lexington, to Cleveland county, the estimated dis-

574 SUPREME COURT OF OKLAHOMA.

Overholser et al. v. Oklahoma Interurban Trac. Co.

tance thereof being about forty miles; same extends into and through Oklahoma and Cleveland counties, O. T."

Afterwards, during the year 1907, amended articles of association were issued, which, among other things, provided:

"That the purposes for which this corporation is formed are to build, equip, run, and operate an electric street railroad from some accessible point in Oklahoma City to and through Capitol Hill, and through or around Oklahoma City and to and through El Reno, O. T., and vicinity; to own, run, and operate trolley poles, power plants, houses, and any other modern appliances therefor; to exercise the right and powers of railroad corporations, and may, with the consent of the towns or cities along said line, construct, supply, and furnish electric lights to same and to the citizens thereof, as well as electric currents; to acquire by purchase or otherwise the franchise, contracts, plants, good will, and other rights or property of any other electric street railroads or lighting companies that may be located within any of the cities or towns along said line; to own or acquire by lease or otherwise all other appliances, either real or personal, that may be deemed necessary to the full enjoyment of the rights and privileges herein obtained. The place from and to which this railroad is to be constructed, is in and upon some accessible street or streets in the city of Oklahoma, and thence to and through such street and streets in the town of Capitol Hill as it may desire to use, and to and through El Reno, Canadian county, the estimated distance thereof being about forty-four miles; same extends into and through Oklahoma and Canadian counties, Oklahoma Territory."

It is obvious that the defendant corporation was organized in pursuance of section 1 of the Session Laws of 1903, page 141, which corresponds with section 1408, Compiled Laws of Oklahoma 1909, relating to electric railways, which provides that corporations may be formed under the general railway laws of the territory of Oklahoma, which shall have the power to use electricity for the propulsion of their cars and rolling stock, etc. Section 2 of said act, which corresponds with section 1409 of the Compiled Laws of Oklahoma 1909, provides that:

"Such corporations, in addition to the powers exercised by railroad corporations generally, may, with the consent of the authorities of any city or town in the territory of Oklahoma,

located along or upon its lines, construct a system of street railways upon such streets and upon such terms and conditions as may be agreed upon between such corporation and such city or town."

A careful consideration of the original and amended articles of association, in connection with the general laws in relation to corporations possessing the power to use electricity for the propulsion of its cars and rolling stock and the statute conferring additional powers thereon, leaves no doubt in the mind of the court that if the defendant obtained the consent of the authorities of the city, as provided by section 2, *supra,* its articles of incorporation are sufficiently broad to authorize it to construct a system of street railways upon the streets thereof upon such terms and conditions as may be agreed upon between such corporation and the city. This is not a departure from the general rule contended for by counsel, that a corporation is circumscribed within what they call its primary power, that is, the power conferred on it by its articles of incorporation, but the application of another well-settled rule, to the effect that:

"The charter of a corporation, read in connection with the general laws applicable to it, is the measure of its powers, and a contract manifestly beyond those powers will not sustain an action against the corporation. But whatever, under the charter and other general laws, reasonably construed, may fairly be regarded as incidential to the objects for which the corporation is created, is not to be taken as prohibited." (*Green Bay & Minn. Ry. Co. v. Union Steamboat Co.,* 107 U. S. 98; *Derr v. Fisher,* 22 Okla. 126; *Oklahoma Portland Cement Co. v. Anderson,* 28 Okla. 650, 115 Pac. 767.)

The record shows that ordinance No. 549, which became a law of the city on the 5th day of November, 1905, grants to the defendant the right to establish, construct, and maintain its railway upon certain streets of the city, the streets upon which the property of the plaintiffs is situated not being included, and further provides that "said railway company will not build its line upon any other streets than the ones designated herein without the consent of the city council of Oklahoma City." The defendant constructed and is maintaining street railway tracks upon the

576        SUPREME COURT OF OKLAHOMA.

Overholser et al. v. Oklahoma Interurban Trac. Co.

streets named in section 1 of said ordinance without any objections being made thereto, as far as the court is informed. At the time ordinance No. 549 took effect, prior to statehood, the only way to pass an ordinance or give the consent required by section 1 of that ordinance was by the action of the city council. When, subsequent to statehood, the defendant desired permission to extend its lines generally throughout the city it caused an initiative petition to be circulated, signed and filed, submitting the question to a vote of the people for their rejection or approval. At the election held thereunder the proposition submitted carried, and afterwards was enacted into an ordinance by the legislative body of the city. The initiated measure purported to amend section 1 of ordinance 549, and is in words and figures as follows:

"Section 1. The right is hereby granted to the Oklahoma Interurban Traction Company, of Oklahoma City, its successors and assigns, hereinafter referred to as said railway company, to establish, construct and maintain in the streets, avenues and alleys of the city of Oklahoma City, as now existing or hereafter extended, a system of electric railroads, consisting of either single or double tracks, with trolleys, trolley wires and all necessary and convenient fixtures and appurtenances needful in the construction and operation of such railroad, and have the right to construct for the purpose of transmitting the power for the propulsion of its cars, overhead trolley systems suspended on poles placed along the curb lines or in the center of such street or streets when necessary, provided that this grant shall be subject to all the restrictions and regulations of ordinance No. 549, of the city of Oklahoma City as herein amended."

Several of the next propositions of law revolve around this action by the electors and the city council and involve the question, Did the foregoing proceedings vest in the defendant corporation power to construct a system of street railways upon the streets of the city? In other words, were the initiative proceedings and the action of the city council, or either of them, sufficient to grant the "consent," required by section 2, *supra?*

On the propositions growing out of this question, the plaintiffs contend: (1) That there was no law in force in the

state authorizing the submission of the initiative measure to a vote of the qualified electors; (2) that if there was a law authorizing such election, the election was void, because it was held at the same time other measures were being voted upon in said city, and therefore was not a special election; and (3) that if the ordinance was legally enacted in the foregoing respects it was void because it sought to confer a perpetual franchise upon the defendant, in violation of section 5a, article 18, of the Con- stitution, which prohibits the granting, extension, or renewal of franchises for a period longer than 25 years. None of these contentions can be sustained. They are all based upon the theory that it was necessary to invoke section 5a, article 18, of the Constitution to procure the consent of the city to construct and operate a street railway system upon the streets of the city other than those specially mentioned in section 1 of ordinance No. 549, which theory to our mind is untenable. Section 5a, *supra,* provides:

"No municipal corporation shall ever grant, extend, or re- new a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon thirty days' notice; and no franchise shall be granted, ex- tended, or renewed for a longer term than twenty-five years."

We are of the opinion that the amendment to section 1 of ordinance 549 was not an attempt to grant, extend, or renew a franchise, and hence does not fall within the purview of the fore- going section of the Constitution. Ordinance 549, as its title states, was "An ordinance authorizing the Oklahoma Interurban Traction Company of Oklahoma City, its successors and assigns, to construct and maintain an electric railway system in the streets and alleys of Oklahoma City." In its entirety it con- stitutes a complete code governing the construction and main- tenance of an electric street railway system. After granting the right to use certain streets for that purpose, section 2 pro-

vides how wires shall be suspended from the trolley poles, and that all the work and improvements shall be constructed under the supervision of the city engineer and public improvements committee of the city council. Section 3 requires the company in the construction of its railway system to comply with the grades established by said city for its streets. Section 4 prescribes the duty of the company when it traverses any streets upon which pavements are constructed, etc. Section 5, 6, 7, 8, and 9 provide a system of rules to insure the safety and convenience of patrons of the road, provide that the charge for transportation of passengers to be exacted shall not exceed the sum of five cents for continuous passage over the company's lines, and that tickets for the use of school children shall be furnished good for one continuous passage in quantities of not less than twenty rides at the rate of two and one-half cents each, and children under the age of five years, when accompanied by parents or guardian, shall be carried free, etc., etc. Then follow sections providing for the participation by the city in the profits of the company and the grant of other powers and the reservation of other privileges incident to the conduct of a street railway corporation. We think it is quite apparent that it was the intention of the city council by the enactment of ordinance 549 to grant to the defendant a franchise to construct an electric street railway system within the city, and also to preserve its reserve power to regulate the defendant's use of the streets and preserve to the people using the public utility many valuable privileges.

To hold that it is not within the power of a city to grant a street railway franchise in the manner here attempted, and that every permission for the extension of its tracks onto other streets or alleys amounts to a new franchise, or the extension or renewal of the old, requiring submission to a popular vote as upon an original grant, would hamper one of the ordinary functions of a municipal corporation and the progress and usefulness of transportation corporations by an unreasonable restriction, and tend to a multiplication of petty franchises, from which a confusion of claims, with resultant burdensome litiga-

tion, would be sure to arise, to the detriment of public interests.
*Thurston v. Houston et al.,* 123 Iowa, 157; *Wood et al. v. City
of Seattle et al.,* 23 Wash. 1; *Cleveland Electric Ry. Co. v. City
of Cleveland,* 137 Fed. 111; *Sims v. Street Railroad Co.,* 37
Ohio St. 556; *Blair et al. v. City of Chicago et al.,* 201 U. S.
400, 50 L. Ed. 801, 26 Sup. Ct. Rep. 427; *Cleveland Elec. Ry. Co.
v. City of Cleveland,* 204 U. S. 116, 51 L. Ed. 399, 27 Sup. Ct. Rep.
202. If, then, as we conclude, the amendment to section 1 of ordi-
nance 549 was not the grant, extension, or renewal of a franchise,
but simply an exercise of the power of the city to regulate the
company's use of its streets reserved by the original grant, then
the provisions of section 5a, article 18, of the Constitution are
not applicable. In our opinion that provision is applicable only
to the grant of an original franchise, or to a renewal or extension
of the period for which a grant has been made, and does not
apply to a mere extension or enlargement of the facilities which
the franchise holder employs in exercising the power originally
granted. *Thurston v. Houston et al., supra.* Section 4c of ar-
ticle 18 of the Constitution provides a means of submitting such
questions to a vote of the people, as follows:

"When such petition demands the enactment of an ordi-
nance or other legal act other than the grant, extension, or re-
newal of a franchise, the chief executive officer shall present the
same to the legislative body of such corporation at its next meet-
ing, and unless the said petition shall be granted more than
thirty days before the next election at which any city officers
are to be elected, the chief executive officer shall submit the said
ordinance or act so petitioned for, to the qualified electors at
said election; and if a majority of said electors voting thereon
shall vote for the same, it shall thereupon become in full force
and effect."

As the foregoing provision was not followed in the present
case, the initiative proceedings were merely advisory and amount
to no more than a formal, though quite unnecessary, approval of
the action of the city council. Of course it follows that if the
amendment of section 1, ordinance No. 549, did not operate to
grant, extend, or renew the franchise formerly granted, the con-

tention of counsel that it had the effect of granting a perpetual franchise in contravention of that part of section 5a, *supra,* which provides that "no franchise shall be granted, extended, or renewed for a longer term than twenty-five years," must fail.

One more question remains to be noticed: Were the plaintiffs entitled to injunctive relief to restrain the defendant from using the streets upon which their property abutted until the resulting damages are ascertained and compensation therefor paid? Counsel contend that this right is guaranteed by section 24, article 2, of the Constitution, which provides:

"Private property shall not be taken or damaged for public use without just compensation. Such compensation, irrespective of any benefit from any improvements proposed, shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law. The commissioners shall not be appointed by any judge or court without reasonable notice having been served upon all parties in interest. The commissioners shall be selected from the regular jury list of names prepared and made as the Legislature shall provide. Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation. The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken. In all cases of condemnation of private property for public or private use, the determination of the character of the use shall be a judicial question."

Granting, without deciding, that the construction of a street railway in the streets of a city imposes an additional burden or servitude upon such streets, it does not follow that the plaintiffs, under the circumstances of this case, are entitled to have the injury inflicted by the invasion of such right ascertained and com-

pensated for before the street is occupied for street railway purposes. That, in effect, was the view entertained by this court in *Edwards v. Thrash*, 26 Okla. 472, 109 Pac. 832. It is true that in the Thrash case the damages alleged were occasioned by changing the grade of a street by municipal agencies, and the question as to whether the same rule ought to be extended to cases where consequential damages are occasioned other than through municipal agencies was left open, but there is small difference in principle between the two cases, and the decision in the Thrash case leads logically to the conclusion reached herein. The following from the opinion of Justice Williams, who delivered the opinion for the court in the Thrash case, is entirely applicable to the facts disclosed by this record, and correctly states the principle involved:

"Whilst the first clause of section 24, art. 2, *supra,* provides that private property shall not be taken or damaged without just compensation, an accompanying clause in the same section provides that, until compensation shall be paid to the owner or into court for the owner, the property of the owner shall not be disturbed or the proprietary rights of the owner divested. Does this latter clause require compensation to be paid to the owner or into court for the owner where the damages are merely consequential? The word 'disturb,' according to Mr. Webster, means 'to interrupt a settled state of,' and according to the same authority 'proprietary' means 'belonging or pertaining to a proprietor, considered as property owned'; and the words 'the property shall not be disturbed or the proprietary rights of the owner divested' seem to mean that possession thereof shall not be taken, nor his property taken, nor the title thereof be divested, until compensation therefor has been first paid to the owner or into court for the owner. This was the controlling construction in the state of Missouri at the time of the adoption of this clause in the Oklahoma Constitution, and, when there was no such provision in force in any other state where a contrary construction prevailed, that of the highest court of Missouri should be especially persuasive. All the courts seem to hold that, under such constitutional provisions, consequential damages arising from the change of an established grade may be recovered by the abutting owner. See, also, section 1, art. 1, c. 10, Sess. Laws 1907-08, and section 443, Wilson's Rev. & Ann. St. 1903. The

only difference seems to be as to whether same shall be ascertained in an eminent domain proceeding or in an action at law for damages.  The majority of the courts having passed on the question appear to hold the latter.  The first Legislature of the state after its erection passed an act entitled 'An Act amending sec. 28 of article 9 of chapter 17, of the Statutes of Oklahoma, 1893, and regulating the method of procedure in the condemnation of private property for both public and private use.'  Sess. Laws 1907-08, art. 1, c. 20, pp. 258, 261.  Neither the eminent domain act as brought over from the territory of Oklahoma, nor as thus amended, provides for the assessment of consequential damages in the case of public improvements made by a municipality.  This evident legislative construction of section 24 of article 2 accords with that placed on the similar provisions of the Missouri Constitution by the Supreme Court of that state. Consequential damages would be difficult to ascertain before the improvements had been made.  This is one of the reasons given by many of the courts as to why it was not intended by the Constitution and statute makers that provisions providing for compensation first to be made for the taking or damaging of property by virtue of eminent domain proceedings did not include consequential damages, and we agree with the Supreme Court of Missouri, in *Clemens v. Insurance Company, supra,* in holding that where the property of the citizen is not taken and his proprietary right not disturbed, but the damage to his property is purely consequential, he is not entitled to have same ascertained, and paid for before the proposed public work is done, and is not entitled to have the work done in pursuance of valid municipal and legislative authority enjoined, but his remedy is one at law for damages."

In addition to this, Justice Williams quoted with approval from *Denver & S. F. R. Co. et al. v. Domke et al.,* 11 Colo. 247; *McMahon & Perrin v. St. L., A. & T. R. Co.,* 41 La. Ann. 827; *Spencer v. Point Pleasant & Ohio R. R. Co. et al.,* 23 W. Va. 406; in all of which the consequential damages were inflicted by public service corporations.

A question involving the right of these plaintiffs to maintain this action has been raised and argued, but as the result would be the same no matter what conclusion we reached on the question of procedure, we will leave it open, except in so far as the same

may be settled by the decisions of this court in *McKay v. City of Enid et al.,* 26 Okla. 275, 109 Pac. 520, and other cases.

The judgment of the court below is affirmed.

All the Justices concur. ·