Howard T. Hogan, J.
In this condemnation proceeding the Town of Hempstead has filed objections to two of the court’s findings, and the claimant objects to the quantum of interest which is set forth in the tentative decree, to wit: 4%.
Taking petitioner’s second objection first, it is the contention of the town that the court erred in ascribing an additional 10% increment in adjusting the comparable sales, by virtue of the accomplished rezoning on the subject parcel for residence purposes. The prime sales relied upon by the court were all sales of commercially zoned property in which the contracts of sale were conditioned upon rezoning. The town contends that the 30% adjustment which was made by its expert took into consideration the fact of the rezoning, and that the rapid rise in value related only to residential property. The record does not bear out this contention. Sales numbers 4 and 6 were sold subject to a rezoning for apartments. This fact was not known to petitioner’s appraiser. It is conceded by the petitioner that the early sale of the subject parcel for $36,900 was subject to a change of zone, and that the contract called for the forfeiture of $10,000 in the event the rezoning was not obtained and the con *136 tract not performed. It is elemental that property zoned for a particular use is more valuable than property sold subject to a change of zone to permit such use. It also appears that the various applications for relief from the zoning ordinances in this vicinity were vigorously opposed. After a complete analysis of the record, particularly in light of this objection, the court finds that the additional 10% increment is reasonable, accurate and just. The objection is overruled.
The town also objects that the court’s decision found a rounded total area of 24.3 acres. The total area shown on the taking map was 23.7 acres. The court credited the testimony of the claimant’s engineer that his survey in December of 1966 showed an additional .59 acres as accreted material. While it may be inferred from this that the entire 24.3 acres were above water and were owned by the claimant on November 16, 1966, the date the order of vesting was effective, special counsel for the town has argued persuasively that the December survey, might not reflect the true amount of upland existing on June 15, 1966, the date which the court found marked a de facto taking of the claimant’s property. The surveys demonstrate that an additional .59 acres became upland between December of 1965 and December of 1966. However, since it does not appear that any engineering study is available which would pinpoint the precise amount of acreage existing on the day of the de facto taking, and since accretion by its very nature is a slow and gradual build-up of land over a period of time, the court will infer that the amount of land present on June 15, 1966 was midway between the land shown on the survey taken within six months on either side of the de facto taking. Accordingly, the court modifies its findings by reducing the total acreage by .295 acres. Applying the $57,000 per acre figure to .295 acres results in a deduction from the award of $16,815. The award is therefore modified to $1,368,285.
Claimant’s objection of the interest rate presents a most interesting question to the court, and one which has become of increasing importance in these times of spiralling inflation. Section 3-a of the General Municipal Law establishes the rate of interest to be paid by the town at no more than 4%. This provision was originally effective in 1939.
Since August 1,1966, section 16 of the State Finance Law has provided for the payment of interest in condemnation proceedings brought by the State at the maximum rate of 6%. The claimant herein contends that the provision for the payment of only 4% in the tentative decree is an unconstitutional confiscation of his property and denies him just compensation. There *137 are many eases which have dealt with the question of the relationship of the interest provision on the award as it relates to just compensation. Time and time again the courts have upheld the á% provisions. (See Matter of City of New York [Bronx Riv. Parkway], 284 N. Y. 48; Matter of City of New York [Maxwell], 15 A D 2d 153.)
There are several recent cases, however, which are significant. In Matter of City of New York [New Municipal Bldg.], Mr. Justice (teller (57 Misc 2d 156) analyzed the present interest rate, .the amendment of the State Finance Law, and rejected the constitutionality of the 4% provision in light thereof. He found that subsequent to August 1, 1966 the City of New York was bound to pay interest at the rate of 6%.
In this court’s opinion the logic of that case is compelling. It is unconscionable for a municipality as a subdivision of the State to pay interest only at the rate of 4% when the State which has created the municipality is paying 6%. The series of cases cited by the petitioner in which the courts have consistently found 4% to be a proper amount and not violative of equal protection or just compensation provisions of the constitution are cases in which the statutory 4% was compared with the general rate of interest in New York State. The situation drastically changes When we compare one statutory rate of interest in condemnation proceedings with another. An individual has no control over which body is acquiring his property and should not be penalized by virtue of the nature of his condemnor. The amount of just compensation cannot vary depending upon whether the State, a county, a town or village is the condemnor.
Petitioner points to a case (Matter of City of New York [Kennedy High School], N. Y. L. J., July 24,1967, p. 10, col. 3) in which the 4% payment was upheld. In that decision however the court was not basing its conclusions upon equal protection of the laws but merely stating that on the facts there presented there was no proof that the 4% provision was so unconscionable and so unjust as to be unconstitutional.
The petitioner also pointed to a recent Court of Appeals decision in Matter of Port Auth. Trans-Hudson Corp. (20 N Y 2d 457) which dealt with the valuation of the Hudson Tubes and which found a 4% rate of interest on that portion of the award relating to the property in New York State, and 6% the legal rate of interest in New Jersey, for that portion of the award relating to the property located in New Jersey which had no limiting statute on the rate of interest in condemnation proceedings. That situation is totally distinguishable from the situation as we now have it. We are not comparing two sovereign *138 States as was the case in the Port Authority case but here are confronted with various segments of municipal government having inconsistent provisions applying to the same state of facts within the same State.
Accordingly, this court finds that the provisions of section 3-a of the General Municipal Law insofar as the rate of interest is concerned are unconstitutional and that the award herein shall bear interest at the rate of 4% from the date of the de facto taking, June 15,1966 to August 1,1966, and from August 1,1966 at the rate of 6%.