**EMPIRE CONSTRUCTION, INC., an Oklahoma corporation, Appellant,**

v.

**CITY OF TULSA, Oklahoma, a municipal corporation, Appellee.**

No. 45200.

Supreme Court of Oklahoma.

June 19, 1973.

Rehearing Denied July 17, 1973.

Houston, Davidson, Jacoby, Sonberg, Main & Nelson, and John E. Robertson, Tulsa, for appellant.

Waldo F. Bales, City Atty., and David Nelson and Samuel C. Stone, Asst. City Attys., Tulsa, for appellee.

Floyd W. Taylor, Gen. Counsel, Okl. Dept. of Highways, Oklahoma City, for amicus curiae, State of Okl., ex rel. Okl. Dept. of Highways.

Roy H. Semtner, Municipal Counselor, and Wm. O. West, Asst. Municipal Counselor, Oklahoma City, for amicus curiae, The City of Oklahoma City, a municipal corporation.

BARNES, Judge.

This appeal arose out of an action by Appellant [plaintiff] against the Appellee [defendant] for alleged damages to plaintiff's property on account of a proposed, but unfulfilled, plan to condemn the property for use in the construction, through the defendant City, of a system of limited access expressways known as the "Master Expressway Plan."

Plaintiff's first alleged cause of action was in the nature of one for inverse condemnation. Its theory was that the an-

nounced plan to build the expressway through the property amounted, in effect, to an indirect taking, or "expropriation" of it, without compensation. Plaintiff asked for the appointment of appraisers to determine the property's value. Plaintiff's second cause of action was for damages, based upon alleged slander of its title, by the publicity given the proposed plan.

The District Court sustained defendant's demurrers to plaintiff's amended petition as to both alleged causes of action. The Court of Appeals reversed said ruling as to the first alleged cause of action, and affirmed as to the second. We grant the Appellee's petition for certiorari, and, on consideration, conclude that the Appeals Court erred in its decision with respect to the alleged cause of action in inverse condemnation.

As to this first alleged cause of action, defendant's demurrer raised the question: Whether, in the absence of an actual invasion of land, or of governmental interference with the owner's right to use the same, may inverse condemnation be maintained?

Defendant's property consists of eight acres of unimproved land located at the corner of Tulsa's East 31st Street and Riverside Drive. A part of the aforementioned Master Expressway Plan is the proposed conversion of Riverside Drive into a limited access expressway to speedily shuttle traffic north and south between the Skelly By-Pass [existing limited access expressway which traverses the south side of Tulsa in an easterly-westerly direction] and an expressway to be known as the "Inner Dispersal Loop," circling Tulsa's downtown business district. When this Loop and the urban portions of Broken Arrow, Crosstown, Cherokee, Osage, Keystone, and Red Fork Expressways are completed, traffic from and to them, as well as from and to the proposed Riverside Drive Expressway, will have rapid ingress and egress to Tulsa's downtown business district, or may travel overhead around it on the Loop.

The defendant City first announced the design of the Master Expressway Plan to the public in June, 1957. On July 26th of that year its Board of Commissioners passed Resolution No. 2009 enlarging said City's "Master Street Plan." Although we have not been favored with a copy of this Resolution, it apparently approved proposed street changes that would be compatible with, or facilitate, construction and operation of the above mentioned Master Expressway Plan.

Thereafter, the City enacted its Ordinance No. 8283, which "established as limited access facilities" all streets and avenues included in the previous Resolution's extension of the Master Street Plan.

It appears to be conceded that the Master Expressway Plan contemplates the realignment, enlargement, and re-location of Riverside Drive through plaintiff's property. The petition also alleges that by passing its Resolution No. 2009, supra, after receiving a letter in July, 1957, from the Tulsa Metropolitan Area Planning Commission, recommending the Master Expressway Plan, Tulsa's Board of City Commissioners "adopted said Master Plan."

It is the defendant's failure to institute condemnation proceedings to take plaintiff's property during the approximately ten-year period following the aforementioned events of 1957 that forms the gravamen of the complaints set forth in the petition plaintiff filed in this action in 1967. Concerning this, the petition alleges, in substance, that plaintiff's sole economic benefit from this unimproved eight acres on Riverside Drive depends upon said property's potential for commercial development, but that, by indicating that the property will be condemned at some indefinite future time in order to convert Riverside Drive into an expressway for incorporation into the planned Master Expressway system, the defendant City has precluded plaintiff from making "any economically prudent, productive, use" of said property. Plaintiff's petition says that by its "retention" of the Master Expressway Plan

"without implementation" for such "unreasonable length of time, the defendant City . . . has 'frozen'" the property in a state of economic unproductivity and condemnation-related "blight" which the plaintiff characterizes as an interference with its "beneficial use" and with plaintiff's "power of disposition" of the property, constituting a "taking without just compensation," contrary to the Oklahoma Constitution's Article 2, § 24, and to the 5th and 14th Amendments to the United States Constitution.

While plaintiff's petition, as amended, presents facts which bear little similarity to those of any case that has yet been before this Court, we are not without precedent for determining the legal question hereinbefore set forth. And, on the basis of said precedent, we think the damages plaintiff has alleged can only be regarded as "consequential" and not recoverable in an inverse condemnation proceeding in view of this Court's long established construction of Article 2, § 24, supra. As early as 1911, this Court, in determining the character of a property owner's rights that must be disturbed before he is entitled to compensation therefor in a condemnation proceeding, in Overholser v. Oklahoma Interurban Traction Co., 29 Okl. 571, 119 P. 127, quoted Edwards v. Thrash, 26 Okl. 472, 109 P. 832, 138 Am.St.Rep. 975, in part as follows:

"Whilst the first clause of section 24, art. 2, supra, provides that private property shall not be taken or damaged without just compensation, an accompanying clause in the same section provides that, *until* compensation shall be paid to the owner or into court for the owner, *the property of the owner shall not be disturbed or the proprietary rights of the owner divested.* Does this latter clause require compensation to be paid to the owner, or into court for the owner, where the damages are merely consequential? The word 'disturb,' according to Mr. Webster, means, 'to interrupt a settled state of,' and according to the

same authority 'propriety' means 'belonging or pertaining to a proprietor, considered as property, owned,' and the words 'the property shall not be disturbed or the proprietary rights of the owner divested' *seem to mean possession thereof shall not be taken, nor the title thereof be divested,* until compensation therefor has been first paid to the owner, or into the court for the owner. This was the controlling construction of the state of Missouri at the time of the adoption of this clause in the Oklahoma Constitution, and, when there was no such provision in force in any other state, where a contrary construction prevailed, that of the highest court of Missouri should be especially persuasive." [Emphasis added.]

After noting that the courts seem to hold that under their State Constitutions consequential damages are recoverable, the Court in the Thrash case continued:

" * * * The first Legislature of the state after its erection passed an act entitled 'An act amending section 28 of article 9 of chapter 17, of the Statutes of Oklahoma, 1893, and regulating the method of procedure in the condemnation of private property for both public and private use.' Neither the eminent domain act as brought over from the territory of Oklahoma nor as thus amended, provides for the assessment of consequential damages in the case of public improvements made by a municipality. This evident legislative construction of section 24 of article 2 accords with that placed on similar provision of the Missouri Constitution by the Supreme Court of the state. Consequential damages would be difficult to ascertain before the improvements had been made. This is one of the reasons given by many of the courts as to why it was not intended by the Constitution and statute makers that provisions, providing for compensation *first* to *be made* for the taking or damaging of property by virtue of eminent domain proceedings, did not include consequential damages, and we *agree with*

*the Supreme Court of Missouri,* in Clemens v. Insurance Company, supra [184 Mo. 46, 82 S.W. 1, 67 L.R.A. 362, 105 Am.St.Rep. 526], *in holding that, where the property of the citizen is not taken and his proprietary right not disturbed, but the damage to his property is purely consequential, he is not entitled to have same ascertained and paid before the proposed public work is done,* \* \* \*." [Emphasis added.]

See also Oklahoma Turnpike Authority v. Dye, 208 Okl. 396, 399, 256 P.2d 438, 441, 442. There is no material difference in the character of the items of damages claimed under plaintiff's first alleged cause of action in this case and some of those claimed in State of Missouri ex rel. City of St. Louis v. Beck, 333 Mo. 1118, 63 S. W.2d 814, 92 A.L.R. 373, in which the Missouri Supreme Court [consistent with its early decisions cited in this Court's Thrash case] held that such damage is "of a personal character, as distinguished from any damage to the property itself, and is not an element to be considered by the Commissioners in assessing benefits and damages" in condemnation proceedings. In a much more recent case, the Missouri Court, while recognizing that the "taking or damaging" of property in the constitutional sense does not necessarily involve an actual physical taking of any part thereof, affirmed the trial court's judgment dismissing the plaintiff's action, after citing with approval cases in which governmental units with power of condemnation had gone further in committing themselves to the condemnation of the property involved that has the defendant in this case. See Hamer v. State Highway Commission, Mo., 304 S. W.2d 869. [Cases from other jurisdictions will also be found in the footnotes to 26 Am.Jur., Eminent Domain, §§ 168–170, and the annotation at 37 A.L.R.3d 127.]

The Court of Appeals appears to have been influenced in its decision by the theory of "de facto taking" referred to in In Re Philadelphia Parkway, 250 Pa. 257, 95 A. 429, Miller v. City of Beaver Falls, 368 Pa. 189, 82 A.2d 34, and an opinion of one appellate division of the New York Supreme Court in the [direct] condemnation case of City of Buffalo v. J. W. Clement Company, 34 A.D.2d 24, 311 N.Y.S.2d 98. When the latter case was appealed to New York's Court of Appeals in City of Buffalo v. J. W. Clement Company, 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895, that Court disagreed with the New York Supreme Court and set aside said lower court's award of damages, after distinguishing between "de facto taking" and "condemnation blight," and finding that the facts failed to disclose any act on the part of the city "which could possibly be construed as an assertion of dominion and control." This latter opinion is in accord with recent decisions, not only in New York [see 76 Crown Street Corporation v. City of New York, 35 A.D.2d 1005, 317 N. Y.S.2d 978], but also in other States. See Cayon v. City of Chicopee, Mass., 277 N. E.2d 116, and Conroy-Prugh Glass Co. v. Commonwealth, Dept. of Tr., 7 Pa.Cmwlth. 66, 298 A.2d 672. In support of its claim of compensable taking or damage, plaintiff points to a letter that the Director of this State's Department of Highways wrote to Tulsa's City Engineer as late as November, 1962, pointing out that all of plaintiff's property would be necessary for construction of the Riverside Drive Expressway project and advising that the defendant City should take whatever action necessary to protect the planning for the Expressway. However, it does not appear that, after this advice or suggestion, the City ever did anything, by way of overt action, to insure that plaintiff's property would be available for the planning of future construction of the Riverside Drive Expressway or for carrying out the Master Expressway Plan. More to the point, defendant did nothing to restrict plaintiff's power of dominion or control over the property.

In urging a decision in this case consistent with Miller and Philadelphia Parkway, supra [which latter decision Miller approvingly referred to], plaintiff's counsel points out certain already completed construction

projects included in the aforementioned Master Expressway Plan, at least one of which they relate to Riverside Drive's conversion to an expressway, as unequivocal acts of the defendant City showing the kind of de facto taking that was adjudged in those cases. Defense counsel counters by saying that these completed features of the Master Expressway Plan and Tulsa's Master Street Plan were needed improvements and will be used independently of the Riverside Drive Expressway, and regardless of whether it is ever constructed or not. It is said that this distinguishes this case from the Miller and Philadelphia Parkway cases in that completion of these projects does not commit the City to carrying out the Master Expressway Plan.

In view of what was said concerning our Constitution's Article 2, § 24, and condemnation statutes in the early Oklahoma cases hereinbefore cited, we find it unnecessary to compare the facts of this case with those cases in other jurisdictions which are claimed to be incompatible with the decision of the trial court. [In this connection, notice In Re Crosstown Expressway, 3 Pa.Cmwlth. 1, 281 A.2d 909, applying Pennsylvania's Eminent Domain Code.] We think it is sufficient to say that, on the basis of Oklahoma decisions, plaintiff's petition, as amended, does not set forth facts sufficient to state a cause of action in inverse condemnation for the taking or damaging of its property under the Oklahoma Constitution and statutes, nor under the United States Constitution. [In the latter connection, see the discussion and cases cited in Southern Kansas Ry. Co. v. Oklahoma City, 12 Okl. 82, 99–108, 69 P. 1050, 1056–1057, Sester v. Belvue Drainage Dist., 162 Kan. 1, 173 P.2d 619, and other cases cited in the footnotes to 26 Am.Jur.2d, Eminent Domain, §§ 157 and 170.] And we so hold. [We need not decide what might have been the elements of plaintiff's damages if the defendant City had already exercised its right of eminent domain as to plaintiff's property, but see City of Tulsa v. Horwitz, 131 Okl. 63, 267 P. 852 (4th Syll.), and other cases cited in State Ex Rel. Department of Highways v. Robb, Okl., 454 P.2d 313.] Thus, we reverse the decision of the Court of Appeals as to plaintiff's first cause of action.

We find no error in that decision as to plaintiff's second alleged cause of action. For the reasons above stated plaintiff's petition for certiorari is granted; the decision of the Court of Appeals is affirmed in part and reversed in part; and the judgment of the District Court is affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., IRWIN, BERRY, HODGES and LAVENDER, JJ., and C. F. BLISS, Jr., Special Judge, concur.

Under Art. 7, § 4, of the Oklahoma Constitution, C. F. BLISS, Jr., was temporarily assigned to act as a Special Justice instead of ROBERT D. SIMMS, who became a regular Justice of this Court subsequent to the filing of this appeal.